**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WILLIAM BROWN,** | **Civil Action No. 15-1372 (FLW)** |
| **Plaintiff,** | |
| **v.** | |
| **CORRECTIONAL MEDICAL SERVICES, et al.,** | **OPINION** |
| **Defendants.** | |

**WOLFSON, United States District Judge:**

## I.     INTRODUCTION

Plaintiff, currently incarcerated, has sued Correctional Medical Services ("CMS"), several doctors and nurses employed by CMS (collectively "Medical Defendants"), two supervisors and/or administrators at CMS, two administrators at the New Jersey Department of Corrections ("NJDOC"), as well as unidentified John Doe Doctor Defendants, alleging claims pursuant to 28 U.S.C. § 1983 and state law.[1]

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.   The gravamen of Plaintiff's Complaint is that the surgeon or surgeons who performed his corrective umbilical hernia procedure in 2008 "forgot" to insert stomach mesh prior to closing the repair, and this oversight led to Plaintiff's collapse in cell, a subsequent corrective procedure, and ongoing medical problems.  Because Plaintiff fails to allege

---

[1] Plaintiff has sued the named Defendants in their individual and official capacities.

1

facts (1) to suggest that any of the Defendants acted with deliberate indifference to his serious medical needs or (2) to support a claim for conspiracy under 1983, the Court dismisses the federal claims without prejudice as to all Defendants at this time, and declines to address Plaintiff's supplemental state law claims.

## II.  FACTUAL BACKGROUND

On February 6, 2008, Plaintiff, while incarcerated, had a corrective procedure to repair an umbilical hernia.  (No. 1, Compl. at ¶ 22.)  It is not clear from the Complaint whether any of the doctors or nurses named in the Complaint performed or assisted with this initial hernia repair or if one or more of the "John Doe" doctors performed the procedure.  Plaintiff alleges that on March 23, 2008, he was transported from the prison to St. Francis Medical Center "in a coma," and when he awoke, the medical staff at St. Francis told him he was "lucky" to be alive.  (*Id.* at ¶ 23.)  According to Plaintiff, the circumstances surrounding his emergency transportation to St. Francis were never explained to him, and the staff reports documenting this incident are contradictory.  Correctional Officer Edwards' report stated that he found Defendant unconscious in his cell, but Registered Nurse Carol Milroy stated in her report that Plaintiff was sitting up in his bed but was lethargic.  (*Id.* at ¶¶ 27-29.)  After waiting roughly a week for a diagnosis, Plaintiff was subjected to a second corrective procedure.  (*Id.* at ¶ 24.) Plaintiff appears to allege that he was told at the time of the second corrective procedure that the doctor who performed the original procedure forgot to put stomach mesh at the site of the repair before closing the area. (*Id.* at ¶ 25.)

Plaintiff alleges that his health has deteriorated due to the actions and inactions of the Defendants involved in the initial medical procedure and that he continues to have medical problems arising from the initial surgery.  (*Id.* at ¶ 30.)  Notably, however, Plaintiff's Complaint

provides no facts related to the six-and-a-half-year period between March of 2008, when the initial procedures were performed, and September 26, 2014, when he sought medical treatment for a swollen and painful lump on the left side of his stomach and pain during urination. (*Id.* at ¶¶ 31-33.) Plaintiff alleges that, on September 26, 2014, he met with Defendant Barbara Brown, an administrator at CMS, and told her about the pain he was experiencing, but he was not seen immediately by a doctor. (*Id.* at ¶ 33.) Two weeks later, Plaintiff filed a grievance over the delay in his treatment and received a response on October 15, 2014, which indicated that he was scheduled to see medical provider. (*Id.* at ¶¶ 34-36.) On November, 17, 2014, Plaintiff was diagnosed with "stones" and "stool retention" based on an X-Ray, and a nurse prescribed milk of magnesia. (*Id.* at ¶¶ 37-38.)

As of the filing of his Complaint, he has not been treated for the lump in his stomach. (*Id.* at ¶39.) Medical staff did inform Plaintiff that the pain he was suffering could be a keloid in the center of his stomach. (*Id.* at ¶ 40.) This keloid allegedly formed due to the stomach staples placed during corrective surgery on July 16, 2014. (*Id.*) It is not clear from the Complaint whether this corrective surgery is related to the 2008 hernia repair. Plaintiff also alleges that he has not received clarification about whether he has Hepatitis C as a result of a blood transfusion due to "mistakes" in the testing. (*Id.* at ¶ 41.) It is not clear from the Complaint whether this blood transfusion was performed during any of the corrective surgeries described in Plaintiff's Complaint. Plaintiff alleges that prison medical staff has also failed to update his medical records with the test results and provide further testing, which Plaintiff alleges is required yearly. (*Id.* at ¶ 42.)

Plaintiff filed a four-count Complaint on January 22, 2015, and it was docketed on February 23, 2015. In the first of these overlapping counts, Plaintiff alleges "[t]he surgeon who

performed the initial medical procedure . . . exercised deliberate indifference to Plaintiff's health by failing to insert the stomach mesh prior to closing the area of concern when he did exploratory laparotomy." (*Id.* at ¶ 48.)   According to Plaintiff, the surgeon's "deliberate indifference to Plaintiff's health and safety was further demonstrated when Plaintiff was informed that the doctor 'forgot' to put a stomach mesh into the area of surgery prior to closing the area of surgery." (*Id.* at ¶ 48.)  Count two alleges a state law claim for medical negligence against CMS for its failure to train supervise and oversee its medical doctors and staff.

Count four alleges claims against all Defendants pursuant to 28 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  In addition to direct claims of inadequate medical treatment, Plaintiff also asserts a supervisory claim against Defendants Gary M. Lanigan and Mr. D'Ilio based on the following allegations:

> 61.   Defendants Gary M. Lanigan, Mr. Dilo [sic] . . . failed to adequately monitor the treatment of prisoners in their care custody and control by contracting with medical provider CMS, constitutes [sic] deliberate indifference to plaintiff's serious medical needs.
>
> 62.   Defendants Gary M. Lanigan, N.J. Commissioner was well aware of the many problems and, complaints prisoners have made against the CMS (Correctional Medical Services Provider), that this has been an ongoing problem with CMS and, its medical doctors, nurses and, staff for a very long time.
>
> 63.   Defendants Lanigan and Dilo [sic] are well aware of this problem and, when notified via remedy/grievance the result is either the prisoner is transferred or, the medical staff transferred or both. . . .

(*Id.* at ¶¶ 61-63.)  In the same Count, Plaintiff also appears to assert claims under Section 1983 and state law corollaries against Defendant CMS for its allegedly inadequate policies and failures to train and supervise its medical staff.  Finally, Plaintiff alleges a Section 1983 civil rights conspiracy by all Defendants, whom Plaintiff alleges were acting in concert to submit false

reports regarding his condition when he was found in his cell on March 23, 2008.  (*Id.* at ¶¶ 55-56.)

Notably, Plaintiff alleges in his Complaint that his claims are not barred by the statute of limitations because he is entitled to tolling during the period in which he was exhausting his administrative remedies.  He alleges that he exhausted his administrative remedies a few months prior to the filing of his Complaint:

> Plaintiff has most recently exhausted all his administrative remedies and therefore, pursuant to the Prison Litigation Reform Act could not pursue any of his claims until such time.  Thus, any defense of failure to exhaust administrative remedy or statute of limitations by defendant be [sic] barred by this Court.

(ECF No. 1, Compl. at ¶ 70.)   In a section of the Complaint entitled "Exhaustion of Administrative Remedies," Plaintiff contends that he exhausted all available administrative remedies as of October 5, 2014.  (*Id.* at ¶ 19.)

## III.   ANALYSIS

### a.  Standard for *Sua Sponte* Dismissal

Under the PLRA, district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege

"sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Fair Wind Sailing, Inc. v. Dempster*, 764

F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### b.  Plaintiff's Section 1983 Claims

The Court first addresses whether Plaintiff states any claims for relief under 28 U.S.C. §

1983.[3]  A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of

his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory ... subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

[3] The Court notes that the initial allegedly botched hernia procedure occurred in 2008, and, thus, Plaintiff's claims may be time-barred.  *See Montgomery v. DeSimone*, 159 F.3d 120, 126 & n. 4 (3d Cir. 1998); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (finding that New Jersey's two-year limitations period on personal injury actions, N.J.S.A. § 2A:14–2, governs claims under section 1983).  Because Plaintiff alleges in his Complaint that he only recently exhausted his administrative remedies (ECF No. 1, Compl. at ¶¶ 19, 70), the Court declines at this time to rule on the statute of limitations issue, particularly in light of recent Third Circuit precedent.  *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015) (holding that "the PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies").  The Court notes, however, that it accepts Plaintiff's representations regarding exhaustion only for purposes of screening the Complaint.

laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress....

Thus, "to state a claim for relief under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States and must show that the alleged

deprivation was committed or caused by a person acting under color of state law." *See West v.*

*Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff's section 1983 claims arise under the Eighth Amendment and proceed under

theories of direct, corporate, and supervisory liability.  He also alleges a § 1983 conspiracy claim

against all defendants.  The Court addresses each category separately.

### i.  Direct Liability Claims against the Individual Defendants

At the outset, the Court finds that the Complaint fails to allege facts showing how many

of the individual Defendants were involved in the alleged violations of his constitutional rights.

In order to prevail under § 1983, plaintiff must assert that each defendant had personal

involvement in the alleged wrongs, and liability cannot be predicated solely on the operation of

*respondeat superior*.  *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Rode*

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  After reviewing the Complaint, the Court

finds that Plaintiff alleges no facts indicating <u>any</u> personal involvement on the part of Nurse

Donique Ivery, Nurse Carol Gallagher, Dr. Abu Ahsan, Dr. Guda Sivakoti, Dr. Shah K. Rajir, or

Allen Martin.[4]   As such, the claims are dismissed without prejudice as to these Defendants.

Plaintiff also fails to sufficiently allege claims of direct liability against the remaining

individual Defendants.  To state a direct claim under the Eighth Amendment, a prisoner must

demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that

---

[4] Plaintiff identifies Defendant Martin as a supervisor at CMS, but *Respondeat superior* is not a
basis for liability under Section 1983.

those needs were serious."[5]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).  For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." *Giles*, 571 F.3d at 330.  The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.  Notably, however, allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (*per curiam*) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001).

    Here, Plaintiff alleges that an unidentified surgeon neglected to insert mesh at the site of Plaintiff's henia repair, allegedly causing Plaintiff injury.  In his Complaint, however, Plaintiff explicitly characterizes the surgeon's conduct as a mistake, stating that the surgeon "forgot" to place the mesh prior to closing the area.  As such, Plaintiff has not established that the surgeon

---

[5] "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir.2003) (quoting Monmouth Cnty. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987))).

acted with deliberate indifference by knowingly or purposefully failing to insert the mesh prior to closing the area.  These allegations rise only to the level of potential medical malpractice, which are insufficient to state a cognizable deliberate indifference to a serious medical need claim under § 1983.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.") (citations omitted); *see also Bramson v. Sulayman*, 251 F. App'x 84, 86 (3d Cir. 2007) (*per curiam*) ("[Plaiinf's] complaint makes clear that the defendants treated him on many occasions.  He claims those treatments proved ineffective and that defendants negligently failed to diagnose his heart condition, but those allegations do not state an Eighth Amendment claim.") (citing *Estelle*, 429 U.S. at 107–08 & n.16.)

With respect to the incidents in 2014, Plaintiff's additional allegations (1) that he was not seen immediately by a doctor for a swollen painful lump on the left side of his stomach and pain during urination and (2) that he has not been provided with the results of tests relating to his hepatitis C status or updated testing likewise do not rise to the level of deliberate indifference.  Although Plaintiff alleges that he told Administrator Barbara Brown about the painful lump and pain while urinating and that he was not immediately seen by a doctor for his ailments, he fails to allege any conduct by Defendant Brown to suggest that she was deliberately indifferent to his serious medical needs.  At most the facts surrounding the delay in scheduling a medical visit for plaintiff, if proven, amount to negligence on the part of Brown or other medical staff.  Plaintiff suggests as much, stating that "someone failed to do their job," resulting in a delay in scheduling his medical appointment. (ECF No. 1, Compl. at ¶ 36.)  Once the error was discovered through Plaintiff's grievance, Plaintiff "was informed that he would be seen by a doctor right away." (*Id.*)  Likewise, Plaintiff alleges that his hepatitis C results were never updated "due to mistakes

in the testing." (*Id.* at ¶ 41.)  As such the claims arising from these incidents are dismissed without prejudice as to all remaining Defendants.

### ii.  Policy or Practice Claim Against CMS

Plaintiff has also sued CMS for its alleged role in causing his injuries.  Like supervisors, a corporation under contract with the state cannot be held liable for the acts of its employees or agents under a theory of *respondeat superior.  See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003); *Rode*, 845 F.2d at 1207.  CMS may, however, be held liable for the acts of an employee if those acts are deemed the result of a policy or custom of CMS, where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that CMS can reasonably be said to have been deliberately indifferent to the plaintiff's serious medical needs. *Albrecht v. Correctional Med. Services*, No. 06-2772MLC, 2009 WL 1834320, at *7 (D.N.J. June 25, 2009) (citing *Natale* 318 F.3d at 584).

The Third Circuit has outlined three situations in which an entity may be held liable for the actions of its employees. *Natale*, 318 F.3d at 584 n.10.  First, "where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Id.* (citations and quotations omitted). Second, "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* (citations and quotations omitted).  Finally, "where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (citations and quotations omitted); *see also Albrecht*, 2009 WL 1834320, at *7; *Thomas v. Corr. Med. Servs.*, No. 04–3358, 2009 U.S. Dist. LEXIS 21762, at *28–*29 (D.N.J. Mar. 17, 2009).

In various places in his Complaint, Plaintiff has alleged in a conclusory manner that CMS failed to adequately train, supervise, and oversee its doctors, nurses, and medical staff "with regard to surgery, post-surgery, and facility treatment" and employed unspecified policies and practices that led to Plaintiff's injuries.  (*See, e.g.*, ECF No. 1, Compl. at ¶¶ 65-69.)  Plaintiff offers no facts, however, regarding these alleged failures to supervise and train or the allegedly deficient policies to bolster these conclusory allegations.  Importantly, Plaintiff has failed to identify any policy or procedure promulgated by CMS that led to Plaintiff's alleged injuries.  As such, the claims against CMS are dismissed without prejudice, and Plaintiff is permitted to submit an Amended Complaint to the extent he is able to cure these deficiencies.

### iii.  Supervisory Liability Claims Against Defendants Lanigan and D'Ilio

The Court also construes Plaintiff's Complaint to allege claims of supervisory liability against Defendants Gary M. Lanigan and Mr. D'Ilio, who are Administrators at NJDOC.[6]  A deliberate indifference claim against a supervisor requires a showing that "'(1) [the supervisor's policies] created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy [ ]." *Lopez v. Corr. Med. Servs., Inc.*, 499 F. App'x 142, 146 (3d Cir. 2012) (quoting *Beers–Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001)); *see also Barkes v. First Correctional Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *judgment rev'd sub nom on different grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  In a nutshell, "[a] highranking prison official can expose an inmate to a danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population."  *Barkes*, 766 F.3d at 324.

---

[6] The Court does not construe the Plaintiff to allege supervisory liability claims against CMS employees Defendants Allen Martin and Barbara Brown.  To the extent Plaintiff wishes to assert such claims, he must do so in an Amended Complaint.

Where this test is met, the official need not have specific knowledge of any particular inmate's plight or the failure of subordinate officials to treat the inmate's serious medical condition. *Id.*

Plaintiff fails to state supervisory claim for relief against Defendants Lanigan and D'Ilio, by failing to provide sufficient facts. Plaintiff alleges that Lanigan and D'Ilio "failed to adequately monitor the treatment of prisoners in their care custody and control by contracting with medical provider CMS, constitutes [sic] deliberate indifference to plaintiff's serious medical needs." (ECF No. 1, Compl. at ¶ 61.) According to Plaintiff, Defendant Lanigan "was well aware of the many problems and, [sic] complaints prisoners have made against the CMS (Correctional Medical Services Provider), that this has been an ongoing problem with CMS and, its medical doctors, nurses and, staff for a very long time." *Id.* at ¶ 62. When notified of "this problem . . . via remedy/grievance," Defendants Lanigan and D'Ilio allegedly transfer the prisoner or medical staff involved. (*Id.* at ¶ 63.) Plaintiff notes that the transfer of medical staff applies only to medical staff at the prison and not surgeons or medical staff who work outside the facility. (*Id.*) The only supervisory policy or practice mentioned by Plaintiff is the alleged transfer of prisoners and medical staff, and Plaintiff and does not explain how this policy or practice allegedly caused Plaintiff's injuries. Further, Plaintiff's allegations that Lanigan and D'Ilio were aware of "problems" with and "complaints" about CMS and its staff are vague at best, and Plaintiff offers no facts that would allow the Court to assess whether these "problems," and "complaints" about which the Administrators allegedly had knowledge amounted to serious deficiencies in the provision of medical care that created an unreasonable risk of constitutional injury to the inmate population. As such, Plaintiff's supervisory claims against Defendants

Lanigan and D'Ilio are dismissed without prejudice,[7] and Plaintiff is permitted to submit an amended Complaint if he is able to cure these deficiencies.

### iv.   Section 1983 Conspiracy Claims Against All Defendants

Finally, the Court construes Count three of Plaintiff's Complaint to allege a conspiracy under 28 U.S.C. § 1983.  "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).  Conspiracy claims under § 1983 require a "meeting of the minds," and to withstand screening, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action.  *See, e.g.*, *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) (*per curiam*) (citing *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998)); *see also Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (affirming dismissal of "conspiracy claims [that] do not appear to be based in fact, but merely upon ... own suspicion and speculation").  It is insufficient to allege that "the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Novellino v. N.J. Dep't of Corr. Mountainview Youth*, 2011 U.S. Dist. LEXIS 85209, 2011 WL 3418201

---

[7] The Court dismisses <u>with prejudice</u> the official capacity suits against Defendants Lanigan and D'Ilio, as state officials are generally not subject to suit for damages in their official capacities because neither states nor arms of the state are "persons" within the meaning of § 1983.  *See, e.g., Bostrom v. New Jersey Div. of Youth and Fam. Servs.*, No. 11–1424 2011 WL 3684817, at *5 (D.N.J. Aug. 22, 2011) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Warnett v. Correctional Med. Services*, No. 07-1291 JHR, 2008 WL 930739, at *4 (D.N.J. Mar. 31, 2008) (NJDOC not a person under section 1983).

(D.N.J. Aug. 3, 2011), at *15 (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).

Here, Plaintiff's alleges that (1) the Defendants "acted in concert to fabricate plaintiff's report(s)" about his condition on March 23, 2008 and that (2) Nurse Carol Milroy submitted a fabricated report about Plaintiff's condition.  (ECF No. 1, Compl. at 8.)  From the outset, it is not clear how conspiring to fabricate reports about Plaintiff's condition on March 23, 2008 would deprive Plaintiff of any constitutional rights.  Further, Plaintiff's allegations are wholly speculative and appear to be based on nothing more than the allegedly contradictory reports submitted by Nurse Milroy and the Correctional Officer who found Plaintiff in his cell.  Notably Nurse Milroy, who allegedly submitted a fabricated report, is not even named as a Defendant. Because Plaintiff has not adequately pleaded the elements of a section 1983 conspiracy, the Court dismisses the conspiracy claim without prejudice as to all Defendants.

### c.  Supplemental Jurisdiction

Although the Complaint fails to state a federal claim, Plaintiff also raises state law claims for relief.  Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed

all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc., 983 F.2d at 1284–1285.  Here, the Court has dismissed the federal claims without prejudice at the earliest possible stage of the proceedings and exercises its discretion to decline supplemental jurisdiction at this time.[8]

---

[8] If Plaintiff files an Amended Complaint that both (1) alleges a valid federal claim and (2) reasserts state-law claims, the Court will exercise supplemental jurisdiction over his state law claims at that time.  To the extent Plaintiff's decides not to file an Amended Complaint in this court, Plaintiff is free to assert his state law claims in state court.

IV.    **CONCLUSION**

Pursuant to the Court's screening authority under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e, the Court dismisses with prejudice the official capacity suits against Defendants Lanigan and D'Ilio.  The Court dismisses without prejudice the remaining federal claims against all Defendants and declines to exercise supplemental jurisdiction over Plaintiff's state law claims at this time, and thus, the Court need not screen the merits of those state claims.  Plaintiff has thirty days to submit an Amended Complaint to cure the deficiencies noted herein.  An appropriate order follows.

Date:   July 22, 2015                                /s/ Freda L. Wolfson
                                                     Freda L. Wolfson
                                                     United States District Court

16