UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM BROWN,** | Civil Action No. 15-1372 (BRM) |
| **Plaintiff,** | |
| v. | |
| **CORRECTIONAL MEDICAL SERVICES, et al.,** | OPINION |
| **Defendants.** | |

**MARTINOTTI, DISTRICT JUDGE**

**THIS MATTER** has been opened to the Court by Plaintiff's filing of an Amended Complaint ("Amended Complaint") (Dkt. No. 11), which the Court now screens pursuant to 28 U.S.C. § 1915(e)(2)(B).[1] For the reasons set forth below, the Amended Complaint is dismissed and Plaintiff is granted 45 days to file a Second Amended Complaint and cure the deficiencies discussed in this Opinion.

**I. BACKGROUND**

Plaintiff is a prisoner currently incarcerated at East Jersey State Prison. At the time of the incidents described in his original Complaint ("Complaint") (Dkt. No. 1) and Amended Complaint, he was incarcerated at New Jersey State Prison. (Dkt. No. 11 at ¶ 5.) The gravamen of Plaintiff's Complaint was that the surgeon or surgeons who performed a corrective umbilical hernia procedure on him in 2008 "forgot" to insert stomach mesh prior to closing the repair, and this

---

[1] This case was previously assigned to the Honorable Freda L. Wolfson. The case was transferred to the undersigned on August 8, 2016. (Dkt. No. 14.)

1

oversight led to Plaintiff's collapse in cell, a subsequent corrective procedure, and ongoing medical problems. The Court screened the Original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed the federal claims as to all Defendants and declined to address Plaintiff's supplemental state law claims in the absence of a viable federal claim.[2]  (Op. dated July 22, 2015 (Dkt. No. 7).) The Court also provided Plaintiff with leave to submit an Amended Complaint with respect to those claims that were dismissed without prejudice.  (*Id.*)  Plaintiff subsequently submitted the Amended Complaint at issue.  (*See* Dkt. No. 11.)

In his Amended Complaint, Plaintiff has alleged claims pursuant to 28 U.S.C. § 1983[3] and has sued Dr. Abu Ahsan, Nurse Donique Ivery, Nurse Carol Gallagher, Nurse Barbara Brown, Nurse Carol Milroy, Nurse Alejandrina Sumicad, and Nurse Margaret Cacuzza, who are allegedly employed by UMDNJ/UCHC (collectively "Medical Defendants").  He has also sued Correctional Medical Services ("CMS"), an entity contracted to provide medical services for the New Jersey Department of Corrections ("NJDOC"), Marcy L. Masker, who is identified as an Ombudsman at NJDOC, and unidentified John Doe individuals and entities. (*Id.* at ¶¶ 5-13.)  Plaintiff's Amended Complaint reiterates some of the earlier allegations regarding the 2008 hernia procedure and includes a litany of complaints about the medical care provided to him by the Medical Defendants from 2007-2014, which the Court addresses below.

## II. LEGAL STANDARD

---

[2] The Court also noted that the claim related to the 2008 hernia surgery appeared to be time barred, but declined to dismiss the Complaint on this basis because Plaintiff had alleged that he was exhausting his administrative remedies until October 5, 2014. (*See* Dkt. No. 7, at 6 n.3.) Plaintiff has not alleged that he was exhausting administrative remedies with respect to any of the claims in his Amended Complaint.

[3] Plaintiff's Amended Complaint mentions only deliberate indifference to his medical needs under § 1983 and does not mention medical negligence.  As such, is not clear whether Plaintiff is attempting to raise any state law claims.

2

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). In order to state an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1979). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mines v. Levi*, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009); *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Young v. Kazmerski*, 266 F. App'x. 191, 193 (3d Cir. 2008) (quoting *Monmouth Ctv. Corr. Inst. Inmates*, 834 F.2d at 347).

**III. DECISION**

Regarding the Medical Defendants, the Court construes Plaintiff's Amended Complaint to raise claims of inadequate medical care under the Eighth Amendment. The vast majority of allegations against the Medical Defendants in the Amended Complaint do not rise to the level of Eighth Amendment violations, and many of the discrete incidents alleged by Plaintiff also appear time barred under the two year statute of limitations for claims brought pursuant to § 1983. *See*

*Montgomery v. DeSimone*, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (finding that New Jersey's two-year limitations period on personal injury actions, N.J.S.A. § 2A:14–2, governs claims under section 1983). Since Plaintiff's Original Complaint is dated January 22, 2015 (Dkt. No. 1, at 11), any discrete incidents with respect to his medical treatment that occurred prior to January 22, 2013 are time barred. The Court addresses each category of claims below.

Plaintiff contends Nurse Carol Gallagher gave him a foot fungus cream for a rash on his face and that Nurse Barbara Brown told him the boils he was experiencing in 2011-2012 were from ingrown hairs. (*Id.* at 23, 26.) The Complaint does not contend that the rash or boils persisted beyond a short duration, had any continuing negative impact on his health, or even required any subsequent treatment. Based upon Plaintiff's vague assertions, he has not adequately set forth facts which could support a determination that the rash or boils constituted a serious medical need. The claims related to the boils he had in 2011-2012 are also plainly time barred.

In his Amended Complaint, Plaintiff also complains about the Medical Defendants' responses to his questions about the medications he was taking, and contends that he is unable to understand his medical records. With respect to Defendant Gallagher, he alleges that she told him in 2012 to take certain medications at bedtime when he complained that the medications were making him pass out, and that she treated him as a nuisance and not a patient. (*Id.* at ¶ 23.) He also alleges that in 2008, Nurse Brown told another inmate that the insulin given to the inmate and Plaintiff was experimental. (*Id.* at ¶ 27.) He also appears to allege the medication given to him since 2007 for hypertension had side effects, but provides no further information about this claim. (*Id.* at ¶ 28.) The Amended Complaint also alleges Plaintiff discovered he was on the drug "Heperan" [sic] and does not understand why he would be on such a strong drug for such a long

4

time, and seeks the Court's help to find out why it was prescribed to him. He explains in the Amended Complaint that he has attached some of his medical records and tests from 2007-2014 to show some of the medications he has been taking.  (*Id.* at ¶¶ 38-40.) Most of the allegations related to his medications occurred more than two year prior to Plaintiff's submission of the Complaint and are time barred. None of the allegations related to his medications suggest any of the Defendants were deliberately indifferent to a serious medical condition suffered by Plaintiff. As such, these claims are dismissed.

Plaintiff further complains that in 2008 he learned he had been tested for HIV by Dr. Abu Ahsan, allegedly over his objections, and that "his Sperm Cells were tested and recorded on the same day 4/11/2008." (*Id.* at ¶¶ 35-36.) He alleges this conduct violated his right to privacy and demands more information about this alleged unauthorized testing. To the extent he could pursue a claim based on unauthorized testing for HIV and of his sperm, those claims appear time barred, as Plaintiff learned of this allegedly unauthorized testing in 2008.

The Court next addresses what appears to be Plaintiff's only potentially viable claim -- the Medical Defendants delayed in sending Plaintiff to a specialist to diagnose and correct the allegedly botched 2008 hernia procedure. (*See generally*, Dkt. No. 11, at 8-10.)  In order for Plaintiff to state a claim for relief, he must provide facts to show that prison officials were deliberately indifferent to his serious medical need. Allegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections. *Estelle*, 429 U.S. at 105-06. Deliberate indifference requires a sufficiently culpable state of mind, such as "reckless[] disregard[]" of a substantial risk of serious harm to a prisoner. *See Farmer v. Brennan*, 511 U.S. 825 (1994). The Third Circuit has concluded the standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat

of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment." *Whooten v. Bussanich*, 248 F. App'x 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987)); *see also Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). The Third Circuit has also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. *See Rouse*, 182 F.3d at 197; *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Plaintiff's Amended Complaint provides few facts about his claim for delayed treatment. He alleges he saw Nurse Cocuzza[4] for chronic care visits during the years from 2009-2012, and at these visits he told her about his "stomach concerns and how it was getting bigger and bigger" since the hernia procedure in 2008. She was allegedly more concerned with taking Plaintiff's blood and thought his stomach "looked alright." (Dkt. No. 11 at ¶ 32.) Plaintiff also alleges Dr. Ahsan was aware of his prior hernia procedures and, for "6 years[, the Medical Defendants] delayed me from seeing a doctor" to correct the earlier hernia procedure. (Dkt. No. 11 at 9.) The Amended Complaint alleges, "They all had knowledge of and delayed contacting a[n] outside doctor sooner [rather] than later." (*Id.*) Plaintiff states that when he saw the specialist, identified as Dr. Louis Fares II, the specialist asked "asked why wasn't he called sooner" and stated that Plaintiff's "stomach was messed up pretty bad." (*Id.*) The correction surgery was performed on July 16, 2014. (*Id.* at 37.) It is not clear whether Plaintiff continues to have complications.

Assuming these facts suggest Plaintiff's had a serious medical condition, they are insufficient to suggest that any of the Medical Defendants recklessly disregarded a substantial risk

---

[4] This Defendant is identified as Nurse Cacuzza earlier in the Complaint. (Dkt. No. at ¶ 14.)

of serious harm to Plaintiff. The facts alleged regarding Defendant Cocuzz do not suggest that she was deliberately indifferent to his medical needs. Although Dr. Ahsan may have had knowledge of Plaintiff's prior hernia procedures, Plaintiff provides no facts to suggest that Dr. Ahsan or the other Medical Defendants knew or suspected that he required corrective surgery or other corrective treatment and failed to provide him adequate medical care or send him to an outside specialist. For these reasons, the Court dismisses without prejudice Plaintiff's claims related to the delay in sending him to a specialist for the corrective hernia repair as to the Medical Defendants. Plaintiff may file a Second Amended Complaint with respect to this claim within 45 days.

The Court also dismisses the Eighth Amendment claims against Defendant Masker, who is identified in the Amended Complaint as the NJDOC Ombudsman, for allegedly failing to investigate Plaintiff's medical history or the hernia surgery performed in 2008 because he has provided no facts to suggest that this Defendant was deliberately indifferent to his serious medical condition and because this claim also appear to be time barred.

Lastly, the Court dismisses the claims against CMS.  As the District Court noted in its prior Opinion, a corporation under contract with the state cannot be held liable for the acts of its employees or agents under a theory of *respondeat superior*. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). CMS may, however, be held liable for the acts of an employee if those acts are deemed the result of a policy or custom of CMS, where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that CMS can reasonably be said to have been deliberately indifferent to the plaintiff's serious medical needs. *Albrecht v. Correctional Med. Services*, No. 06-2772MLC, 2009 WL 1834320, at *7 (D.N.J. June 25, 2009) (citing *Natale*, 318 F.3d at 584). Plaintiff has not alleged that his injuries were the result

of a policy or custom of CMS or any inadequate practices by CMS that could amount to deliberate indifference by CMS.

For the reasons stated above, the Amended Complaint is dismissed without prejudice in its entirety and the case shall be marked closed. Plaintiff may file a Second Amended Complaint within 45 days that cures the deficiencies in his federal claims as described in this Memorandum Opinion.[5] To the extent Plaintiff cures his deficiencies, the case shall be reopened. An appropriate Order follows.

        *s/Brian R. Martinotti*
        **BRIAN R. MARTINOTTI**
        **UNITED STATES DISTRICT JUDGE**

Date: December 6, 2016

---

[5] As noted above, is not clear whether Plaintiff's Amended Complaint attempts to assert any state law claims for relief.  If Plaintiff files an Second Amended Complaint that both (1) alleges a valid federal claim and (2) asserts state-law claims, the Court will exercise supplemental jurisdiction over his state law claims at that time.  To the extent Plaintiff's decides not to file a Second Amended Complaint in this court, Plaintiff is free to assert any state law claims in state court.